UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
FRANK BALESTRIERI,                                   :
                                                     :
                              Plaintiff,             :   **COMPLAINT**
                                                     :
          -against-                                  :
                                                     :
RUBIN BROS. PRODUCE CORP. and                        :
MARC RUBIN,                                          :   **JURY TRIAL DEMANDED**
                                                     :
                              Defendants.            :
------------------------------------------------------------------------ X

Plaintiff Frank Balestrieri ("Plaintiff" or "Balestrieri"), by his attorneys Pechman Law Group PLLC, complaining of Defendants Rubin Bros. Produce Corp. and Marc Rubin (collectively, "Defendants"), alleges:

## NATURE OF THE COMPLAINT

1.   Balestrieri worked at Defendants' produce distribution facility for approximately fifteen years. Although Defendants classified Balestrieri as a Warehouse Foreman, during approximately the last seven years of his employment Balestrieri's primary work duty was to serve as a Checker, ensuring that produce pulled out from merchandise by porters aligned with customer orders. During this period, Balestrieri regularly worked over fifty hours per workweek but did not receive overtime compensation for his hours worked over forty per workweek, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and New York Labor Law Arts. 6 and 19 ("NYLL"). Defendants also failed to provide Balestrieri with accurate wage statements with each payment of wages, as required by the NYLL's Wage Theft Prevention Act ("WTPA").

2. Balestrieri brings this action to recover unpaid overtime wages, liquidated damages, statutory damages, pre- and post-judgement interest, and attorneys' fees and costs pursuant to the FLSA, NYLL, and WTPA.

## JURISDICTION

3. This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367.

## VENUE

4. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because Rubin Bros. Produce Corp. is located and operated by Defendants in the Southern District of New York and the acts and omissions giving rise to Plaintiff's claims occurred in the Southern District of New York.

## THE PARTIES

**Plaintiff Frank Balestrieri**

5. Balestrieri resides in Nassau County, New York.

6. Defendants employed Balestrieri from approximately 2007 until April 15, 2022.

**Defendant Rubin Bros. Produce Corp.**

7. Defendant Rubin Bros. Produce Corp. ("Rubin Bros") is a New York corporation that owns and operates a produce distribution facility located at 147-148 NYC Terminal Market, Bronx, New York 10474.

8. Rubin Bros receives and distributes vegetables and other produce to the New York City market and advertises itself as "accommodat[ing] local and out-of-state deliveries at any time, day or night."  *See* https://rubinbros.com/our-facility/ (last accessed August 1, 2022).

9. Rubin Bros is an "enterprise engaged in commerce" within the meaning of the FLSA.

10. Rubin Bros has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

11. In the three years preceding the filing of this Complaint, Rubin Bros has had an annual gross volume of sales in excess of $500,000.

**Defendant Marc Rubin**

12. Defendant Marc Rubin is an owner and principal of Rubin Bros.

13. Marc Rubin is identified as the Chief Executive Officer of Rubin Bros on New York State Division of Corporations corporate entity filings.

14. Throughout Balestrieri's employment, Marc Rubin held and exercised authority over personnel decisions at Rubin Bros, including the authority to hire and fire employees, set employee wage rates, and maintain employee pay records.

15. For example, Marc Rubin interviewed and hired Balestrieri.

16. Marc Rubin set Balestrieri's work schedule.

17. Marc Rubin assigned Balestrieri's work duties.

18. Marc Rubin determined Balestrieri's pay rate.

19. Marc Rubin exercised sufficient control over Rubin Bro's operations and Balestrieri's employment to be Balestrieri's "employer" under the FLSA and the NYLL.

## STATEMENT OF FACTS

20. From approximately 2015 through April 15, 2022, Balstrieri regularly worked approximately fifty-three hours per workweek as a Checker at Rubin Bros.

21. Throughout this period, Defendants paid Balestrieri a rate of $1,800 per workweek that failed to compensate Balestrieri for hours worked over forty per workweek at a rate of one and one-half (1 ½) times his regular hourly rate.

22. For example, during the week of December 16 through December 22, 2020, Balestrieri worked: (1) a 10.93-hour shift (from 7:06 p.m. to 6:02 a.m.) on December 16, 2020; (2) an 11.03-hour shift (from 7:18 p.m. to 6:20 a.m.) on December 17; (3) a 10.77-hour shift (from 7:14 p.m. to 6:00 a.m.) on December 20; (4) a 10.98-hour shift (from 7:00 p.m. to 5:59 a.m.) on December 21; and (5) a 10.1-hour shift (from 7:23 p.m. to 5:29 a.m.) on December 22, totaling 53.82 hours.

23. For the week of December 16 through December 22, 2020, Defendants paid Balestrieri $1,800. The wage statement Defendants provided to Balestrieri for this workweek reflects that Defendants paid him for forty hours of work at a regular rate of $45 per hour (*i.e.*, $1,800), and failed to pay him for the additional 13.82 hours worked.

24. For example, during the week of June 16 through June 22, 2021, Balestrieri worked: (1) a 10.78-hour shift (from 7:24 p.m. to 6:11 a.m.) on June 16; (2) a 10.52-hour shift (from 7:23 p.m. to 5:54 a.m.) on June 17; (3) a 10.7-hour shift (from 7:22 p.m. to 6:04 a.m.) on June 20; (4) a 10.83-hour shift (from 7:17 p.m. to 6:07 a.m.) on June 21; and (5) a 10.45 hour shift (from 7:19 p.m. to 5:46 a.m.) on June 22, 2021, totaling 53.28 hours.

25. For the week of June 16 through June 22, 2021, Defendants paid Balestrieri $1,800. The wage statement Defendants provided to Balestrieri for this workweek reflects that Defendants paid him for forty hours of work at regular rate of $45 per hour (*i.e.*, $1,800), and failed to pay him for the additional 13.28 hours worked.

26. Balestrieri's primary duty as a Checker was to check pallets of produce pulled from the warehouse by porters to ensure that they matched customer orders.

27. Balestrieri did not have the power or authority to hire, fire, or discipline other employees at Rubin Bros.

28. Balestrieri did not assign work to or supervise the work of other employees at Rubin Bros.

29. Balestrieri did not train other employees at Rubin Bros.

30. Balestrieri did not have the power or authority to set the wage rates or schedules of other employees at Rubin Bros.

31. Balestrieri reported to foreman-in-charge Louis Dolmus and to Marc Rubin.

32. From 2015 to the end of his employment at Rubin Bros., Balestrieri was a member of the International Brotherhood of Teamsters Local 202.

33. Defendants required Balestrieri to punch in and out of work each day.

34. On information and belief, Defendants paid Jose Garcia, another Checker for Rubin Bros, overtime compensation equivalent to one and one-half (1 ½) times Garcia's regularly hourly rate for hours worked over forty per workweek.

## FIRST CLAIM
### (FLSA – Unpaid Overtime Wages)

35. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

36. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiff.

37. Defendants were required to pay Plaintiff one and one-half (1 ½) times his regular hourly wage rate for all hours worked over forty per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq*.

38. Defendants failed to pay Plaintiff the overtime wages to which he was entitled under the FLSA.

39. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff overtime wages.

40. As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover his unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

## SECOND CLAIM
### (NYLL – Unpaid Overtime Wages)

41. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

42. Defendants are employers within the meaning of the NYLL §§ 190 *et seq.*, 651(6), and supporting New York State Department of Labor ("NYDOL") regulations, including but not limited to 12 N.Y.C.R.R. Part 142, and employed Plaintiff.

43. Under the NYLL and supporting NYDOL regulations, Defendants were required to pay Plaintiff one and one-half (1 ½) times his regular hourly wage rate for all hours worked over forty per workweek.

44. Defendants failed to pay Plaintiff the overtime wages to which he was entitled under the NYLL.

45. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff overtime wages.

46. As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover his unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

## THIRD CLAIM
### (NYLL Wage Theft Prevention Act – Failure to Provide Accurate Wage Statements)

47. Plaintiff repeats and realleges all foregoing paragraphs by reference.

48. The NYLL and the WTPA require employers to provide employees with an accurate wage statement each time they are paid.

49. Throughout Plaintiff's employment with Defendants, Defendants paid Plaintiff without providing him a wage statement at the end of every pay period accurately listing, *inter alia*, the regular and overtime rate or rates of pay; the number of regular and overtime hours worked per pay period; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of NYLL § 195(3).

50. As a result of Defendants' violation of NYLL § 195(3), Plaintiff is entitled to recover statutory damages, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

    a. declaring that Defendants violated the overtime wage provisions of the FLSA, the NYLL, and supporting regulations;

    b. declaring that Defendants violated the wage statement provisions of the NYLL's WTPA;

    c. declaring that Defendants' violations of the FLSA and the NYLL were willful;

    d. enjoining future violations of the FLSA and NYLL by Defendants;

    e. awarding Plaintiff damages for unpaid overtime wages;

    f. awarding Plaintiff liquidated damages pursuant to the FLSA and NYLL;

g. awarding Plaintiff statutory damages as a result of Defendants' failure to furnish Plaintiffs with accurate wage statements pursuant to the NYLL's WTPA;

h. awarding Plaintiff pre- and post-judgment interest under the FLSA and the NYLL;

i. awarding Plaintiff reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

j. awarding such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: New York, New York
August 3, 2022

PECHMAN LAW GROUP PLLC

By: */s/ Louis Pechman*

Louis Pechman
Galen C. Baynes
Pechman Law Group PLLC
488 Madison Avenue - 17th Floor
New York, New York 10022
(212) 583-9500
pechman@pechmanlaw.com
baynes@pechmanlaw.com
*Attorneys for Plaintiff*